THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| **GABBRIELLA G. BARKSDALE,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **vs.** | **Case No. 2:25CV00182 DAK-CMR** |
| **VIA TRANSPORTATION, INC., a Delaware corporation, BRADLEY HERKIMER, an individual, and DOES 1-10,** | **Judge Dale A. Kimball** |
| **Defendants.** | **Magistrate Judge Cecilia M. Romero** |

This matter is before the court on Defendants Via Transportation, Inc. ("Via") and Bradley Herkimer's ("Mr. Herkimer") (collectively, "Defendants") Motion to Dismiss in which they seek dismissal of Plaintiff Gabbriella G. Barksdale's ("Ms. Barksdale") Second, Fourth, Sixth, Seventh, and Eighth causes of action. The court held oral argument on the motion on September 22, 2025. At the hearing, Defendants were represented by Liesel B. Stevens, and Ms. Barksdale was represented by Ryan Nelson. At the conclusion of the hearing, the court took the matter under advisement. Now being fully informed, the court issues the following Memorandum Decision and Order granting in part and denying in part Defendant's motion. The court dismisses Ms. Barksdale's Sixth (Section 1981), Seventh (Intentional Infliction of Emotional Distress), and Eighth (Negligent Supervision and Retention) Causes of Action, but the court declines to dismiss her claims for Hostile Work Environment Based on Race (Second Cause of Action) or Hostile Work Environment Based on Sex (Fourth Cause of Action).

1

**INTRODUCTION**

Via is a global technology company that provides digital infrastructure for public transit. Via's subsidiary, River North Transit LLC, partners with local municipalities to provide transit technology and services to clients, including High Valley Transit ("HVT") in Summit County, Utah. HVT has its own employees, including drivers, who provide transportation to riders in the community.

Ms. Barksdale was employed by Via as a support specialist beginning on December 6, 2021. Her responsibilities included assisting HVT drivers and providing customer service to riders using Via's platform. Via ended Ms. Barksdale's employment in September 2023.

Ms. Barksdale claims that she was harassed based on her race and sex throughout her employment with Via, and she has sued Via and its General Manager, Bradley Herkimer ("Mr. Herkimer"). According to Ms. Barksdale, when she reported this discrimination and harassment to management, including Mr. Herkimer, she was met with indifference, dismissal, and ultimately retaliation. She asserts that despite her satisfactory job performance, she was terminated on September 18, 2023, shortly after her complaints about discrimination and harassment were escalated to Human Resources by another employee. Ms. Barksdale claims that Via and its agents intentionally, willfully, and maliciously discriminated against her based on her race and sex, failed to take appropriate corrective action when informed of discriminatory conduct by drivers and others, and ultimately retaliated against her for engaging in protected activity.

In the instant motion, Defendants have moved to dismiss Ms. Barksdale's Second (Hostile Work Environment Based on Race), Fourth (Hostile Work Environment Based on Sex),

Sixth (Race Discrimination, Hostile Work Environment, and Retaliation in Violation of 42 U.S.C. § 1981); Seventh (Intentional Infliction of Emotional Distress), and Eighth (Negligent Supervision and Retention) causes of action. The motion does not seek dismissal of her claims for Race Discrimination (Count I), Sex Discrimination (Count III), or Retaliation (Count V). While Defendants deny Barksdale's allegations, they assert that even if they assume the truth of her allegations for purposes of this motion, she fails to sufficiently plead these claims because most of the alleged misconduct was committed by third parties—not by Via employees or management. Therefore, Defendants argue, the court should dismiss these claims under Rule 12(b)(6).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[2] While this standard does not impose a "probability requirement," it does require "more than a sheer possibility that a defendant has acted unlawfully."[3] This "plausibility" requirement "must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

[2] *Id.*

[3] *Id.*

the line from conceivable to plausible.'"[4] "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."[5] When evaluating a Rule 12(b)(6) motion to dismiss, "the court presumes the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations."[6] In *Ashcroft v. Iqbal*, the Supreme Court further observed that "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[7]

## DISCUSSION

**I.    Claims for Harassment Based on Race and Sex (Second and Fourth Causes of Action)**

Ms. Barksdale alleges in her Complaint that all instances of sexual harassment occurred between December 2022 and May 2023,[8] and that all instances of alleged racial harassment occurred between January 2022 and July 2023.[9] She alleges that she filed her EEOC charge in June 2023.

Defendants, however, argue that Ms. Barksdale's Second and Fourth causes of action for hostile work environment based on race and sex under Title VII of the Civil Rights Act of

---

[4] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] *Id.*

[6] *Margae, Inc. v. Clear Link Techs.*, 620 F. Supp. 2d 1284, 1285 (D. Utah 2009) (citing *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

[7] 556 U.S. at 678.

[8] ECF No. 1, Compl. ¶¶ 25-28.

[9] *Id.* ¶¶ 16-24.

1964 ("Title VII") fail because they are untimely. Contrary to Ms. Barksdale's allegations, Defendants point out that Ms. Barksdale actually filed her EEOC Charge in June 2024.[10]

Title VII specifies that a charge of discrimination must be filed within 180 days after the alleged unlawful employment practice occurs.[11]But "[i]n states in which a state agency has authority to investigate employment discrimination ('deferral states'), Title VII requires claimants to file a charge of discrimination within 300 days of the alleged unlawful employment practice. Utah is a deferral state."[12]

Accordingly, Ms. Barksdale was required to file her charge of discrimination within 300 days of the last unlawful employment practice, i.e., the last instance of harassment. But she failed to do so, filing it instead on June 4, 2024. She then filed an amended charge of discrimination on August 2, 2024.[13] In other words, for her harassment claims to be timely, she must have alleged that harassment took place after August 9, 2023, which is the 300th day prior to the day on which she filed her initial charge, but she has not made such an allegation.[14]

Ms. Barksdale contends, however, that the continuing violation doctrine applies in this situation to reset the limitations period. Under federal law, when a defendant's discriminatory

---

[10] Defendants have attached the Charge of Discrimination to their motion. ECF No. 18-1, Charge of Discrimination. The charge is indeed dated June 4, 2024—not June 2023. The court presumes this was an inadvertent typographical error.

[11] *See* 42 U.S.C. § 2000e-5(e)(1).

[12] *Branham v. Delta Airlines*, 184 F. Supp. 3d 1299, 1306–07 (D. Utah 2016), *aff'd*, 678 F. App'x 702 (10th Cir. 2017) (quoting *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 n.1 (10th Cir. 2003)).

[13] *See* ECF No. 18, Ex. A.

[14] *See Rogers v. Morris*, No. 2:11-CV-134 TS, 2012 WL 1802449, at *2 (D. Utah May 17, 2012) (dismissing a Title VII hostile work environment claim as time barred where plaintiff failed to allege any discrete act of harassment during the 300-day period).

conduct forms part of a single, ongoing unlawful employment practice, the statute of limitations is assessed under the continuing violation doctrine.[15] This doctrine applies when "the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act," such as a hostile work environment.[16] The Tenth Circuit has consistently applied *Morgan*, emphasizing that for a hostile work environment claim, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability," provided that an act contributing to the claim occurs within the filing period.[17]

Ms. Barksdale argues that the August 16, 2023, investigation into her complaints, followed by a "hostile confrontation" with Mr. Herkimer on August 17, 2023, and her subsequent termination on September 18, 2023, all occurred within 300 days of the June 4, 2024, EEOC filing. These events, according to Ms. Barksdale, represent the culmination of the ongoing hostile work environment and demonstrate that the discriminatory conduct continued within the limitations period.

Ms. Barksdale also argues that when a termination occurs within the statutory period and is connected to earlier discriminatory conduct, the entire pattern of discrimination may be actionable.[18] She contends that her termination was not an isolated act but rather the

---

[15] *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).

[16] *Herrera v. City of Espanola*, 32 F.4th 980, 993 (10th Cir. 2022) (quoting *Hamer v. City of Trinidad*, 924 F.3d 1093, 1098 (10th Cir. 2019)).

[17] *Hansen v. SkyWest Airlines*, 844 F.3d 914, 923 (10th Cir. 2016) (quoting *Morgan*, 536 U.S. at 117).

[18] *See Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1139 (10th Cir. 2008); *see also Duran v. Lafarge N. Am. Inc.*, 855 F. Supp. 2d 1243, 1249–50 (D. Colo. 2012) (concluding that termination

culmination of the ongoing harassment and retaliation that she experienced throughout her employment.

The court finds that it would be premature at this stage of the litigation to conclude that the continuing violation doctrine does not apply, which would bar these two claims. After discovery has been conducted, Defendants may file a motion for summary judgment regarding the possible untimeliness of Ms. Barksdale's race and sexual harassment claims, but those claims remain for now.

**II.    Claims for Discrimination, Harassment, and Retaliation Under Section 1981 (Sixth Cause of Action)**

Defendants argue that Ms. Barksdale's sixth cause of action for discrimination, hostile work environment, and retaliation under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") fails because her conclusory allegations are insufficient to allege that the termination of her employment would not have happened "but for" race discrimination, as required by Supreme Court precedent.[19] Section 1981 "prohibits racial discrimination in 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'"[20] To succeed on a Section 1981 claim, "a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual

---

could be viewed as the culmination of ongoing harassment and retaliation, making prior incidents relevant).

[19] *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

[20] *Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1532 (10th Cir. 1995) (quoting 42 U.S.C. § 1981).

interest."[21] Furthermore, "[t]o prevail [on a Section 1981 claim], a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."[22] This means that "a § 1981 plaintiff plausibly must allege that race explained plaintiff's injuries" and "didn't just play some role" in the decision-making process.[23] This causation standard imposes a higher pleading burden than that required for a Title VII claim.[24] And to survive a motion to dismiss, "a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to" the requirement of but-for causation.[25]

Here, Ms. Barksdale has failed to plead sufficient factual allegations to state a plausible Section 1981 claim. Although the Complaint generally alleges that Defendants made "racially charged comments and jokes about police brutality," Ms. Barksdale specifically identifies only a few alleged comments and jokes made by Via employees that she claims are racially charged comments. For example, she claims that a coworker said, "Yeah, she gets you like that" when a rider expressed surprise that Ms. Barksdale was Black;[26] another said he "had never seen a live

---

[21] *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (affirming dismissal of plaintiff's Section 1981 claim under Rule 12(b)(6) where plaintiff's allegations did "not provide sufficient detail to create a plausible inference that [defendant's] actions were because of [plaintiff's] race").

[22] *Comcast Corp.*, 589 U.S. at 341; *see also Mann v. XPO Logistics Freight, Inc.*, 819 F. App'x 585, 594 n.15 (10th Cir. 2020).

[23] *Galindo v. Taylor*, 723 F. Supp. 3d 1008, 1025–26 (D. Kan. 2024) (cleaned up) (citing *Comcast Corp.*, 589 U.S. at 331).

[24] *See Bostock v. Clayton County, Georgia*, 590 U.S. 644, 657 (2020).

[25] *Nadendla*, 24 F.4th at 305.

[26] ECF No. 1, Compl. ¶ 17.

police brutality killing" (without any reference to race);[27] and Mr. Herkimer allegedly told Ms.
Barksdale that she could not use the word "hillbilly" because she was not white.[28] Ms.
Barksdale also alleges that "management called her "anorexic" and "bulimic" in a racially
charged context,[29] and that bus riders used racial slurs with management's knowledge and
inadequate response.[30]

The court finds that such allegations are insufficient to establish that the termination of
Ms. Barksdale's employment was because of her race. "[A]n employee's subjective belief in a
comment's invidious nature also does not support an inference of discriminatory intent."[31]
There is certainly a racial element in being called the "N-word" and any such conduct by bus
riders was abhorrent. But Ms. Barksdale does not allege that any such slurs were ever used by
Via employees or management. Instead, she alleges that Mr. Herkimer failed to take corrective
action. But such alleged inaction against third-party passengers of a public transit service does
not amount to a plausible allegation of intentional discrimination against Ms. Barksdale

---

[27] ECF No. 1, Compl. ¶ 21. Even if this alleged comment was racial in nature, a stray racial slur by someone not involved in the adverse action is insufficient to support a claim of racial discrimination under §1981. *See Farragher v. City of Boca Raton*, 524 U.S. 775, 788 ("simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount" to a hostile work environment) (internal citations omitted); *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1151 (10th Cir. 2008) ("an isolated and ambiguous comment is generally considered too abstract to support an inference of discrimination").

[28] ECF No. 1, Compl. ¶ 23.

[29] *Id.* ¶ 24.

[30] *Id.* ¶ 18.

[31] *See Adamson v. Multi Cmty. Diversified Serv., Inc.*, 514 F.3d 1136, 1151 (10th Cir. 2008) (explaining that "an employee's subjective belief in a comment's invidious nature . . . does not support an inference of discriminatory intent.")

because of her race. Ms. Barksdale speculation about the racial intent behind non-racial comments is insufficient.[32] She also does not allege any facts to establish that her employment was terminated because of her race, nor does she contend that the stated basis for her termination—her repeated tardiness—was false.[33] In short, without any supporting factual details, these allegations do not support an inference that Ms. Barksdale's termination would not have happened but for her race.[34]

### III. Intentional Infliction of Emotional Distress (Seventh Cause of Action)

Defendants argue that Ms. Barksdale's seventh cause of action for intentional infliction of emotional distress ("IIED") fails because it is preempted by the "exclusive remedy" provision of the Utah Workers' Compensation Act ("UWCA").[35] The UWCA provides that "an action at law may not be maintained against an employer or against any officer, agent, or employee of the employer based upon any accident, injury, or death of an employee," which includes "mental

---

[32] *Id.*

[33] *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (a Section 1981 plaintiff must meet the higher pleading standard of showing that but for race, she would not have suffered the loss of a legally protected right).

[34] *See Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 626 (6th Cir. 2013) (affirming dismissal of a Section 1981 claim where "Plaintiff provide[d] no facts that would allow a court to infer that the adverse employment action at issue was a result of his race"); *Banks v. Cypress Chase Condo. Ass'n B, Inc.*, 616 F. Supp. 3d 1316, 1321 (S.D. Fla. 2022) (dismissing Section 1981 claim where plaintiff failed to "plead sufficient facts to raise a plausible inference of discrimination"); and *Odom v. Columbia Univ.*, 906 F. Supp. 188, 195 (S.D.N.Y. 1995) (dismissing Section 1981 claim because a "mere factual assertion of unequal treatment or race-motivated conduct is insufficient to survive a Rule 12(b)(6) motion; instead, a plaintiff must specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent.'").

[35] *See Giddings v. Utah Trans. Auth.*, 107 F. Supp. 3d 1205, 1210 (D. Utah 2015) (quoting Utah Code Ann. §34A-2-105(1)).

injuries on the job."[36] In essence, the UWCA "creates an exclusive administrative scheme that offers workers a simple, adequate, and speedy forum for remedying certain workplace injuries while also protecting employers from disruptive or vexatious lawsuits for alleged negligence."[37] Thus, the UWCA "broadly preempts claims arising from workplace injuries . . . ."[38]

The UWCA, however, does not preempt claims for injuries arising from the workplace where a plaintiff can show the defendant(s) had an "intent to injure," meaning that the defendant "had a specific mental state in which the [defendant] knew or expected that the injury would be the consequence of his action."[39] This is known as the "intent to injure" exception. This mental state may be proven "either (1) with evidence that the agent "desired the consequences of his actions," or (2) with evidence that the agent acted with the knowledge that "the consequences were virtually certain to result."[40] To invoke this exception, "an employee must plead more than an assertion that the employer knew there was some risk of injury" or that "some injury was substantially certain to occur at some time."[41]

In this case, Ms. Barksdale has not pled sufficient facts to show that Via or Mr. Herkimer "desired the consequences" of their actions or were "virtually certain" that her alleged injuries

---

[36] *Id.* at 1210-11 (quoting Utah Code Ann. § 34A-2-105(1)) (internal quotations omitted).

[37] *Billy v. Edge Homes*, No. 2:19-CV-00058-JNP-EJF, 2020 WL 2572522, at *3 (D. Utah May 21, 2020) (quoting *Helf v. Chevron U.S.A., Inc.*, 203 P.3d 962, 967 (Utah 2009)) (internal quotations omitted).

[38] *Id.*

[39] *Helf v. Chevron U.S.A., Inc.*, 2015 UT 81, ¶ 23, 361 P.3d 63.

[40] *Id.* (emphasis added).

[41] *Christiansen v. Harrison W. Constr. Corp.*, 2021 UT 65, ¶ 19, 500 P.3d 825 (internal quotations omitted).

would result. Rather, she makes only a single conclusory assertion in the Complaint that Defendants' conduct was "intentional or reckless and was undertaken with the purpose of inflicting emotional distress on Barksdale or with knowledge that severe emotional distress was certain or substantially certain to result."[42] This is insufficient to meet the pleading requirements set forth in *Iqbal* and *Twombly*.[43] Accordingly, the "intent to injure" exception does not apply here.

Moreover, this claim fails for another reason because the conduct alleged in the Complaint does not rise to the level of "outrageous and intolerable" conduct required under Utah law.  The majority of the "outrageous and intolerable" conduct alleged by Ms. Barksdale was done by third parties who are not employed by Via and over whom Via has no direct authority or control. This includes the riders who used racial slurs, the HVT drivers who Ms. Barksdale claims sexually harassed her, and the HVT leader who said she looked homeless.[44] In addition, termination alone is not sufficient to establish an IIED claim.[45] The remaining allegations, even if true, are not so outrageous and intolerable as to offend the "generally accepted standards of decency and morality" or to "evoke outrage or revulsion."[46] Ms. Barksdale's claim for IIED is therefore dismissed.

---

[42] ECF No. 1, Compl. at ¶ 99.

[43] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

[44] ECF No. 1, Compl. ¶¶ 18, 22, 25-27, 98.

[45] *See Crowe*, 632 F. Supp. 3d at 1242 ("While termination can be an emotionally distressing event in one's life, mere termination alone does not constitute the intentional infliction of emotional distress.").

[46] *Keisel v. Westbrook*, 2023 UT App 163, ¶ 73, 542 P.3d 536, *cert. denied*, 554 P.3d 1097 (Utah 2024).

**IV.  Negligent Supervision and Retention (Eighth Cause of Action)**

Again, Defendants argue that the "exclusive remedy" provision of the UWCA (discussed above) also preempts Ms. Barksdale's claim for Negligent Supervision and Retention. Ms. Barksdale argues that such claims are viable where an employer knew or should have known of an employee's dangerous propensities and failed to control that employee.[47]

Defendants point out that Ms. Barksdale has not cited a single case to support her distinction. To the contrary, the exclusive remedy provision of the UWCA applies to negligence-based claims, including those alleging negligent supervision.[48] The court agrees, and Ms. Barksdale's claim for Negligent Supervision and Retention are dismissed.

**V.  Claims Against Mr. Herkimer**

Ms. Barksdale has brought two claims against Mr. Herkimer: a claim under Section 1981 and for IIED. Even assuming the truth of her allegations against Mr. Herkimer for purposes of this motion, the court finds that Ms. Barksdale has not sufficiently pled either claim against him. For the same reasons as set forth above, her Section 1981 claim as alleged against Mr. Herkimer individually should also be dismissed. While the court recognizes that individuals may be held liable under § 1981,[49] the allegations here are not sufficient.

---

[47] *See, e.g., Estate of Glaves v. Mapleton Andover LLC*, 659 F. Supp. 3d 1208, 1220-21 (D. Kan. 2023) (denying summary judgment on negligent supervision claim where fact issues existed as to whether the employer should have known of an employee's dangerous propensity).

[48] *See Hirase-Doi v. U.S. West Comms., Inc.*, 61 F.3d 777, 786-87 (10th Cir. 1995), *abrogated on other grounds by Burlington Indus. B. Ellerth*, 524 U.S. 742 (1998); *McFarlane v. Nexeo Staffing*, LLC, No. 2:10cv222-DAK, 2011 WL 1226105, at *2 (D. Utah Mar. 30, 2011) ("Utah courts have consistently held that the Worker's Compensation Act prohibits civil remedies for emotional distress damages and for claims of negligent supervision and employment.")

[49] *See Bolden v. PRC Inc.*, 43 F.3d 545, 551 n.1 (10th Cir. 1994)

The only race-based conduct alleged by Ms. Barksdale against Mr. Herkimer is that he told Ms. Barksdale that she could not say "hillbilly" because she was not white.[50] Ms. Barksdale also alleges that he called her "anorexic" and "bulimic" "in a racially charged context," told her to "get a therapist" when she complained about discrimination, "dismissed and ignored her complaints about racial harassment," and "participated in the retaliatory termination."[51]

While these allegations remain supportive of her claims for race and sexual harassment, along with retaliation, they are not sufficient to maintain a Section 1981 claim. Ms. Barksdale has not alleged that Mr. Herkimer was involved in the decision to terminate her employment, much less that Mr. Herkimer decided to terminate Ms. Barksdale's employment based on her race.[52] Ms. Barksdale has thus failed to state a plausible Section 1981 claim against Mr. Herkimer, and this claim should be dismissed.

In addition, of the allegations asserted in support of the IIED claim, only a few involve comments or omissions by Mr. Herkimer.[53] Even if these allegations were true, Mr. Herkimer's conduct is not extreme or outrageous enough to offend the generally accepted standards of decency and morality in society.[54] Accordingly, Ms. Barksdale's claims against Mr. Herkimer in his individual capacity are dismissed.

---

[50] ECF No. 1, Compl. ¶ 23.

[51] *Id.* ¶¶ 24, 29, 30.

[52] *See Adamson*, 514 F.3d at 1151 ("an isolated and ambiguous comment is generally considered too abstract to support an inference of discrimination").

[53] ECF No. 1, Compl. ¶¶ 18, 23, 24, 27, 29, 30, 33.

[54] *Keisel*, 2023 UT App 163, ¶ 73; *see also Chard v. Chard*, 2019 UT App 209, ¶ 57, 456 P.3d 776 ("[T]o prevail on a claim for IIED, a plaintiff must be able to prove that the defendant engaged in extraordinarily vile conduct, conduct that is atrocious, and utterly intolerable in a civilized community.") (internal quotations omitted).

**CONCLUSION**

Accordingly, Defendants' Motion to Dismiss [ECF No. 18] is GRANTED IN PART AND DENIED IN PART. Ms. Barksdale's Sixth, Seventh, and Eighth Causes of Action are DISMISSED for failure to state a claim. The court declines, however, to dismiss her Second and Fourth Causes of Action.

Accordingly, Ms. Barksdale's claims for Race Discrimination (First Cause of Action), Hostile Work Environment Based on Race (Second Cause of Action), Sex Discrimination (Third Cause of Action), Hostile Work Environment Based on Sex (Fourth Cause of Action) and Retaliation (Fifth Cause of Action) remain. Defendants are directed to file an Answer by February 27, 2026, and the parties are reminded to comply with the Order to Propose Schedule.[55]

DATED this 9th day of February 2026.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

---

[55] *See* ECF No. 5.